SIMMONS et al., Appellants,

v.

HERTZMAN et al., Appellees.

[Cite as *Simmons v. Hertzman* (1994), 99 Ohio App.3d 453.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930933.

Decided Dec. 21, 1994.

*Gates T. Richards Co., L.P.A.,* and *Gates T. Richards,* for appellants.
*Lindhorst & Dreidame* and *John A. Goldberg,* for appellees.

*Per Curiam.*

Appellants Palmo and Harriet Simmons's single assignment of error contends that the trial court erred in granting the motion to dismiss filed by appellees, Dr. Bernard L. Hertzman ("Hertzman"), Dr. Asher O. Hoodin ("Hoodin"), and Hoodin, Levi & Associates, Inc. ("Corporation"), "based upon the belief that a claim for negligent sterilization is derivative." In the Simmonses' accompanying argument they assert that an action for wrongful pregnancy is recognized in Ohio as a direct right of the parent, in which the parent may recover damages proximately caused by the birth of a child subsequent to a doctor's failure to perform a sterilization procedure properly.

On May 3, 1982, Palmo Lee Simmons had a vasectomy, which apparently was performed by Dr. Hoodin. On June 22, 1982, he was seen by Dr. Hertzman, who informed him that he was sterile. In December 1982, Harriet A. Simmons discovered she was pregnant and a subsequent sperm test determined that Palmo Simmons was fertile. On July 9, 1983, April Lynette Simmons was born with severe abnormalities.

Appellants initially filed a complaint against Dr. Hertzman on November 23, 1983, alleging that "Plaintiff suffered an injury by the negligent failure of the vasectomy by the Defendant and Plaintiffs' child, April Lynette Simmons, will require medical care and attention in the future, the reasonable value of which is unknown at the present time," and that as a result of the negligence "Plaintiffs will incur expenses for the care and maintenance of the child * * * as well as medical expenses to correct the abnormalities at birth." The complaint also alleged that as a result of Dr. Hertzman's alleged negligence, "Plaintiffs' child * * * suffered physical injury and deformity and may suffer mental injury which could diminish her earning capacity and could require special education and care in the future, the reasonable value of which is unknown at the present time."

Appellants' complaint was amended May 6, 1985, to include Dr. Hoodin and the Corporation, alleging that "Plaintiff Palmo Lee Simmons suffered an injury by the negligent failure of the vasectomy procedure and follow-up by Defendant Hertzman and Plaintiffs' child * * * will require medical care and attention in the future, the reasonable value of which is unknown at the present time" and "[a]s a result of the negligence of Defendant Hertzman, Plaintiff Palmo Lee Simmons and his daughter * * * will incur medical expenses for the care and maintenance of the child as well as medical expenses to correct the abnormalities at birth." Also included in the complaint was the allegation that as a result of Dr. Hertzman's negligence, "Plaintiffs' child suffered physical injury and deformity and may suffer mental injury which would diminish her earning capacity and could require special education and care in the future, the reasonable value of which is unknown at the present time." The complaint included a claim for relief in the alternative against Dr. Hoodin and the Corporation if it were determined that Dr. Hoodin performed the vasectomy and a claim on behalf of April Lynette Simmons by Harriet Simmons which incorporated by reference all the allegations set forth in the previous counts.

Dr. Hoodin and the Corporation filed a motion to dismiss based on the failure of the appellants to file their action within the proper statute of limitations. The trial court granted the motion to dismiss, stating that:

"The Court finds that the medical malpractice action filed against defendants, Asher O. Hoodin and Hoodin, Levi & Associates, Inc., by plaintiffs, Mr. and Mrs. Palmo Lee Simmons which includes, but is not limited to, any cause of action for wrongful birth, wrongful conception and/or wrongful pregnancy are dismissed against defendants, Asher O. Hoodin and Hoodin, Levi & Associates, Inc., for failure of such claims to be filed within one year after the cause of action accrued pursuant to the statute of limitations for medical malpractice actions contained in R.C. 2305.11(A)."

This decision was not appealed.

Subsequently, the appellees filed a motion pursuant to Civ.R. 12(B)(6) to dismiss the cause of action brought on behalf of April Lynette Simmons for failure to state a claim. On January 16, 1990, the trial court granted the motion and stated:

"The Court hereby orders and decrees that plaintiffs' Third Claim for Relief in the Amended Complaint filed against defendants, Bernard L. Hertzman, M.D., Asher O. Hoodin, M.D. and Hoodin, Levi & Associates, Inc., by plaintiffs, Mr. and Mrs. Palmo Lee Simmons, on behalf of April Simmons is dismissed on the grounds that Ohio law does not recognize a cause of action brought by a plaintiff who seeks damages for being born as a proximate result of negligent sterilization."

The decision was appealed and this court affirmed the trial court's judgment. This court agreed with the appellants that the claim asserted on behalf of April Lynette Simmons was not a claim for wrongful life, and determined that the claim was a claim for damages "sought for April's present and future medical expenses related to genetic birth abnormalities because of the negligently performed vasectomy on her father." *Simmons v. Hertzman* (1991), 71 Ohio App.3d 139, 141, 593 N.E.2d 83, 84, jurisdictional motion overruled (1991), 61 Ohio St.3d 1426, 575 N.E.2d 215. Determining, however, that any alleged negligence by the doctor "necessarily occurred prior to conception and cannot be related to the genetic abnormalities for which damages are sought," we held that the allegations set forth in the complaint were insufficient to survive appellees' motion to dismiss because the complaint failed to sufficiently allege "any facts under which it might conceivably be demonstrated that the injury sustained was the natural and probable consequence of the negligence alleged." *Id.*

Dr. Hertzman, Dr. Hoodin, and the Corporation then filed a motion to dismiss the remaining causes of action in the underlying case, arguing that the causes of action were legally insufficient because they were derivative of April Lynette Simmons's previously dismissed claim.[1] It is the granting of this motion that is now before us on appeal.

Although it was not designated as such, we assume that appellants' motion was brought pursuant to Civ.R. 12(B)(6). When reviewing a Civ.R. 12(B)(6) motion to dismiss, a trial court must take as admitted material allegations contained in the complaint, *State ex rel. Alford v. Willoughby Civ. Serv. Comm.* (1979), 58 Ohio St.2d 221, 223, 12 O.O.3d 229, 230, 390 N.E.2d 782, 785, and to affirm a dismissal pursuant to such a motion, an appellate court must conclude that it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

We acknowledge that Ohio recognizes a cause of action for "wrongful pregnancy" or "wrongful conception." A "wrongful conception" or "wrongful pregnancy" claim is a malpractice claim brought by a parent "for proximate damages arising from the birth of a child subsequent to a doctor's failure to

---

1. Dr. Hoodin and the Corporation were dismissed from any medical malpractice action "including any cause of action for wrongful conception and/or wrongful pregnancy" pursuant to the trial court's granting of their motion to dismiss for failure to file a claim within the applicable statute of limitations. In this appeal, Dr. Hoodin and the Corporation are claiming that the Simmonses have suffered no harm independent from their derivative relationship with their child and thus apparently do not view the Simmonses' cause of action as a wrongful-pregnancy claim.

properly perform a sterilization procedure." *Johnson v. Univ. Hospitals of Cleveland* (1989), 44 Ohio St.3d 49, 51, 540 N.E.2d 1370, 1372. In such an action, "Ohio recognizes the 'limited damages' rule which limits the damages to the pregnancy itself and does not include child-rearing expenses. The extent of recoverable damages is limited by Ohio's public policy that the birth of a normal, healthy child cannot be an injury to her parents." *Johnson v. Univ. Hospitals, supra*, at paragraph two of the syllabus. The Ohio Supreme Court has not determined whether the parents of a child who is conceived after an unsuccessful sterilization procedure, but who is not a "healthy, normal child," may recover the expenses associated with any "defect" in the child.

■ While we agree with the Simmonses that their wrongful-pregnancy action is an independent claim for damages, we are convinced from our review of their complaint that they can prove no facts entitling them to recovery for the damages they seek in light of both the Ohio Supreme Court's decision to apply the limited-damages rule to wrongful-pregnancy cases and our analysis in *Simmons v. Hertzman, supra.*

The Simmonses do not seek recovery of costs and expenses associated with the pregnancy. They seek instead recovery of their daughter's present and future medical expenses related to genetic birth abnormalities because of the negligently performed vasectomy on her father.

While *Johnson, supra*, did not directly address the issue of whether the parents of a child born with birth defects were entitled to recover damages associated with the birth defects in a cause of action for wrongful pregnancy, the court did view a wrongful-pregnancy claim as one involving traditional concepts of tort law, *i.e.*, "duty and a breach of that duty which was the proximate cause of damage," in its rejection of a "no recovery" rule being applied to wrongful-pregnancy cases. *Johnson, supra*, 44 Ohio St.3d at 58, 540 N.E.2d at 1378.

Furthermore, the court refused to follow the "benefits" rule of damages "because of the impossibility of a jury placing a price tag on a child's benefits to her parents." The court explained, "We are not qualified to judge whether a child might become President or a hopeless derelict. We cannot pretend to know what the future may hold—and neither can [n]or may a jury." *Id.*

In its rejection of the "full recovery rule," the court explained "[W]e are not persuaded to adopt the full recovery rule because the strict rules of tort should not be applied to an action to which they are not suited, such as a wrongful pregnancy case, in which a doctor's tortious conduct permits to occur the birth of a child rather than the causing of an injury." *Id.*

We believe the reasons for rejecting these rules of recovery would also apply to limiting the damages allowed the parents of a child born with infirmities. We

find pertinent to an indiscriminate application of the limited-damages rule in a wrongful-pregnancy case Judge Markus's statement in his dissent in opposition to a limited-recovery rule in *Johnson v. Univ. Hospitals of Cleveland* (Jan. 14, 1988), Cuyahoga App. No. 53192, unreported, 1988 WL 3762, in which he stated, "We should decline to draw a distinction between cases for a 'healthy' child and an 'abnormal' child, as some jurisdictions do. The difference between a 'healthy' child and an 'abnormal' child may often be a matter of degree, a fact which discourages the creation of a special rule for 'abnormal' children. Every person has some 'abnormality.'"

We believe that the Ohio Supreme Court's application of traditional tort law, its admission of not knowing what a child's future might hold, and its determination that the birth of a child is not an injury, as incorporated in its analysis which resulted in limiting damages in *Johnson, supra,* would also apply to the birth of a child with abnormalities, such that recovery of costs other than those associated with the pregnancy itself would be precluded.

Moreover, in *Simmons v. Hertzman, supra,* we determined that "[t]he facial infirmity in the complaint * * * is the absence of a sufficient allegation of proximate cause, which is reflected by the failure to recite any facts under which it might conceivably be demonstrated that the injury sustained was the natural and probable consequence of the negligence alleged." *Id.,* 71 Ohio App.3d at 141, 593 N.E.2d at 84. This same infirmity exists in the parents' claim for wrongful pregnancy. There is no allegation in the complaint that the unsuccessful vasectomy increased the probability that the Simmonses' child would be born with abnormalities or that the failure to perform a successful vasectomy directly caused the abnormalities.

Our reading of *Johnson, supra,* does not reveal that the Ohio Supreme Court has discarded proximate cause as a necessary element of a wrongful-pregnancy claim. In *Johnson, supra,* the court, quoting Prosser & Keeton, Law of Torts (5 Ed.1984) 264, Section 41, explained that:

" ' "Proximate cause"—in itself an unfortunate term—is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in an infinite liability for all wrongful acts, and would "set society on edge and fill the courts with endless litigation." As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

" 'This limitation is to some extent associated with the nature and degree of the connection in fact between the defendant's acts and the events of which the plaintiff complains. Often to greater extent, however, the legal limitation on the scope of liability is associated with policy—with our more or less inadequately expressed ideas of what justice demands * * *.' (Footnote omitted.)" *Johnson, supra,* 44 Ohio St.3d at 57, 540 N.E.2d at 1377.

Appellants' complaint is insufficient to support the parents' claim for medical expenses to care for their daughter's genetic abnormalities because it is devoid of any allegation that the genetic abnormalities were proximately caused by or were the natural and probable consequences of appellees' negligent vasectomy procedures. See *Simmons v. Hertzman, supra.* Accordingly, we affirm the trial court's decision, not because the Simmonses' claim was derivative, but because the recovery for a wrongful-pregnancy claim is limited to the damages proximately caused by an unsuccessful vasectomy procedure, *i.e.,* the costs associated with the pregnancy.

Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., and KLUSMEIER, J., concur.

M.B. BETTMAN, J., dissents.

M.B. BETTMAN, Judge, dissenting.

As the majority acknowledges, Ohio recognizes a cause of action for wrongful pregnancy. In *Johnson v. Univ. Hospitals of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370, the Supreme Court made it clear that wrongful pregnancy is a suit filed by a parent "for proximate damages arising from the birth of a child subsequent to a doctor's failure to properly perform a sterilization procedure." *Id.* at 51, 540 N.E.2d at 1372. In the context of this case, the appellant, Palmo Simmons, has brought a wrongful pregnancy action on his own behalf against defendant-appellee, Bernard Hertzman, M.D.[2] I agree with the majority that this is not a derivative action, but rather the father's own independent and direct

---

2. The majority decision refers to appellants and appellees. I believe that Mr. Simmons is the only remaining plaintiff in this case and Dr. Hertzman the only remaining defendant. This is the second appeal of this case. In the first appeal, this court dismissed the derivative claim Harriet Simmons brought on behalf of her daughter April. Mrs. Simmons has alleged no claims for relief on her own behalf in this lawsuit. Further, as to Mr. Simmons own direct claims which are the subject of this appeal, all defendants other than Dr. Hertzman have been dismissed on statute-of-limitations grounds.

claim for damages.[3]  The question is, are there any damages recognized under Ohio law for this tort?

In *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 2 O.O.3d 133, 356 N.E.2d 496, the Supreme Court of Ohio made some very significant points.  The court, in a *per curiam* decision, held that a cause of action allowing damages following a negligently performed sterilization procedure is not against public policy.  The *Bowman* court wrote:

" * * * The choice not to procreate, as part of one's right to privacy, has become (subject to certain limitations) a Constitutional guarantee.  See *Griswold v. Connecticut* (1965), 381 U.S. 479 [85 S.Ct. 1678, 14 L.Ed.2d 510]; *Roe v. Wade* (1973), 410 U.S. 113 [93 S.Ct. 705, 35 L.Ed.2d 147]; and *Doe v. Bolton* (1973), 410 U.S. 179 [93 S.Ct. 739, 35 L.Ed.2d 201].  For this court to endorse a policy that makes physicians liable for the foreseeable consequences of all negligently performed operations *except* those involving sterilization would constitute an impermissible infringement of a fundamental right."  (Emphasis *sic*.)  *Bowman v. Davis, supra*, at 46, 2 O.O.3d at 135–136, 356 N.E.2d at 499.

The issue of the elements of recoverable damages, however, was not addressed in *Bowman* at the appellate levels.

In *Johnson, supra*, the Supreme Court addressed part of the issue left open in *Bowman:* namely, what damages, if any, a parent may recover following an unsuccessful sterilization for the birth of a normal, healthy child.  Determining on public policy grounds that the birth of a normal, healthy child cannot be an injury to its parents, the court adopted the "limited-damages" rule, limiting damages in this context to those associated with the pregnancy itself, and not for any child-rearing expenses.[4]  The court also limited the mitigation-of-damages rule in this context as a matter of law, holding that where an unplanned or unwanted pregnancy results from a negligently performed sterilization, no parent can be compelled to have an abortion or to place the child for adoption.  *Id.*, 44 Ohio St.3d at 57, 540 N.E.2d at 1377.

This case asks us to decide an issue expressly not decided by the Supreme Court in either *Bowman* or *Johnson*, and that is, in a wrongful pregnancy action, what damages, if any, a parent may recover for the birth of a child that is not

---

3.  Dr. Hertzman argues that Mr. Simmons's claim for reimbursement for medical expenses is derivative.  This argument is meritless.  A parent has a direct, statutory obligation to support a child, which includes necessary medical expenses.  R.C. 3103.03; *Children's Hosp. of Akron v. Johnson* (1980), 68 Ohio App.2d 17, 22 O.O.3d 11, 426 N.E.2d 515.

4.  This rule now appears to be the rule in the majority of the states which have considered the problem.  For an excellent list of a state-by-state survey, see *Lovelace Med. Ctr. v. Mendez* (1991), 111 N.M. 336, 349, 351, 805 P.2d 603, 616, 618, Appendix, fn. 1–3.

normal or healthy following an unsuccessful sterilization. My colleagues in the majority believe that even under these circumstances the limited-damages rule should be applied.[5] I cannot agree.

Much has been written about damages when children have been born following unsuccessful sterilizations.[6] In the case at bar, the matter has been simplified in part because Mr. Simmons, on his own behalf, is seeking no damages for any emotional distress he may have suffered as a result of the birth of an unhealthy child. Thus, we need not deal with what was so troubling to the court in *Johnson*, namely the difficulty and unseemliness of trying to weigh economic and emotional benefits and burdens against one another when a child is born. The issue of damages for emotional distress in this context must await another day.

Mr. Simmons also does not ask for ordinary child-rearing expenses in this case, even though this case is factually dissimilar to *Johnson* in that his child was not born healthy. Mr. Simmons seeks only extraordinary economic expenses related to the child's birth defects, which could include special medical, maintenance, and educational expenses.

I consider this case a medical malpractice case, and would analyze the economic damages requested on traditional tort principles. I believe this is consistent with what actually happened in *Bowman, supra.*[7] I see no particular reason to view this case differently from other medical malpractice cases involving babies born with impairments. See, generally, S. Schwartz & N. Tucker, Handling Birth

---

5. As Mr. Simmons did not seek any damages for himself relating to the cost of the vasectomy procedure or for his wife's pregnancy, which are the kinds of limited damages allowed by the court in *Johnson*, the majority has upheld the outright dismissal of his claim.

6. Of particular interest are *Fassoulas v. Ramey* (Fla.1984), 450 So.2d 822; *Speck v. Finegold* (1981), 497 Pa. 77, 439 A.2d 110; *Sherlock v. Stillwater Clinic* (Minn.1977), 260 N.W.2d 169. But, see, Minn.Stat. 145.424 (1984); Note, Traditional Tort Principles and Wrongful Conception Child–Rearing Damages (1993), 73 B.U.L.Rev. 407; Annotation, Recoverability of Compensatory Damages for Mental Anguish or Emotional Distress for Tortiously Causing Another's Birth (1989), 74 A.L.R.4th 798; Annotation, Medical Malpractice and Measure and Element of Damages in Connection with Sterilization or Birth Control Procedures (1969), 27 A.L.R.3d 906.

7. I note that the *Bowman* court, which did not name the tort with which it was dealing, held the suit to be "a traditional negligence action." *Bowman, supra,* 48 Ohio St.2d at 45, 2 O.O.3d at 135, 356 N.E.2d at 499. In *Bowman*, twins were born following a negligently performed sterilization procedure. One of the twins was normal and healthy, but the other suffered from serious congenital abnormalities and mental retardation. Damages were sought in four categories, one of which included costs of "institutionalization, care, nursing, and special attention" for the abnormal twin. A substantial general verdict was awarded in the case, but damages were not broken down by categories. Although the issue of the elements of the damage award was not specifically addressed by the Supreme Court, the entire verdict was affirmed, and the court of appeals did hold that the total amount of the award was not excessive. *Bowman v. Davis* (July 9, 1975), Montgomery App. No. 4730, unreported, at 14.

Trauma Cases (1985) 85–103, Chapter 6. As in any such case, Mr. Simmons must prove duty, breach of duty, proximate cause, and damages.

Some additional discussion of proximate cause is necessary in this case. I disagree with the majority view on proximate cause in this case. I do not read *Johnson* as questioning proximate cause in a wrongful pregnancy case, but as analyzing, on public policy grounds, what damages will be compensable for this tort. I do not believe *Johnson* compels the conclusion that Mr. Simmons must prove that April's defects were specifically caused by the sterilization.

Under traditional tort principles a doctor is responsible for the foreseeable consequences of his negligent acts. See Restatement of the Law 2d, Torts (1979), Section 917, Comment *e.* Even though a particular injury may not be anticipated, the tortfeasor is responsible so long as an unbroken sequence of events occurs following the negligent act. See *Mussivand v. David* (1989), 45 Ohio St.3d 314, 321, 544 N.E.2d 265, 272; *Mudrich v. Std. Oil Co.* (1950), 153 Ohio St. 31, 39, 41 O.O. 117, 121, 90 N.E.2d 859, 863; *Lewis v. Woodland* (1955), 101 Ohio App. 442, 446, 1 O.O.2d 359, 361, 140 N.E.2d 322, 326.

The causes of birth abnormalities are many and varied. As advances are made in the fields of perinatology and neonatology, more and more is known about these causes. See, *e.g.,* M. Becker, Establishing Proximate Cause in the 'Brain Damaged Baby' Case, Ohio Trial (Summer 1993) 9, and the references in the endnotes thereto.

For the purposes of the tort of wrongful pregnancy, I believe the doctor who does the negligent sterilization is responsible for all legally recoverable damages related to the baby's abnormalities except those which may have been caused by some other superseding act of negligence. For example, if a vasectomy were negligently performed, but the birth defects were caused by the failure of the obstetrician to perform a medically indicated cesarean section or by a traumatic forceps delivery, then the obstetrician, rather than the urologist, would be responsible for the damages. There also may be examples of concurrent liability, such as a negligent sterilization by one doctor and the failure of another doctor to pick up an obvious birth defect on a test. Absent these intervening or superseding acts, however, I believe the doctor who negligently performs the sterilization is legally responsible for the resulting allowable damages. See, *e.g., Reynolds v. Physicians Ins. Co. of Ohio* (1993), 68 Ohio St.3d 14, 623 N.E.2d 30; *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 613 N.E.2d 1014, paragraph six of the syllabus.

I believe that a liberal view of causation and damages is especially required in these cases because a doctor's negligence violates what the Supreme Court in *Bowman* declared to be a fundamental right, namely, the right to limit the size of one's family.

The exact nature of April Simmons's impairments is not clear from the limited record before us, because Mr. Simmons's claim was dismissed on a Civ.R. 12(B)(6) motion. While Mr. Simmons still must prove what he alleges, I would allow him to recover for such economic damages as extraordinary medical expenses, special educational and equipment expenses, psychological counseling, vocational training, and other such economic expenses both past and those reasonably certain to occur in the future.