SCHIRMER et al., Appellants,

v.

MT. AUBURN OBSTETRICS & GYNECOLOGIC ASSOCIATES, INC. et al., Appellees; Barden et al., Defendants.

[Cite as *Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assoc.*, 155 Ohio App.3d 640, 2003-Ohio-7150.]

---

21. See id.

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030034.

Decided Dec. 30, 2003.

642

Mark B. Smith Co., L.P.A., and Mark B. Smith, for appellants.

Patrick K. Adkinson, for appellees Mt. Auburn OB/GYN, Inc., and Kevin R. Fitzgerald, M.D.

Dinsmore & Shohl, L.L.P., Frank C. Woodside III, Robert A. Carpenter and Sharon E. Gronotte, for appellees Children's Hospital Medical Center and Martha Walker, M.S.

Rendigs, Fry, Kiely & Dennis, L.L.P., Paul W. McCartney and Megan K. Roach, for appellee Howard M. Saal, M.D.

GORMAN, Judge.

{¶ 1} Plaintiffs-appellants, Helen and Richard Schirmer, appeal from the trial court's order dismissing their complaint for damages allegedly caused by the medical negligence of the defendants-appellees, Dr. Kevin R. Fitzgerald, Mrs. Schirmer's obstetrician, his employer, Mt. Auburn Obstetrics and Gynecologic Associates, Inc., Children's Hospital Medical Center ("CHMC"), Martha Walker, M.S., and Howard M. Saal, M.D., who conducted genetic testing during Mrs. Schirmer's pregnancy. The issue is what damages parents of a child born with birth defects are entitled to recover where their reliance on negligent genetic testing and medical advice deprived them of the information necessary to decide whether to terminate the pregnancy. We hold that because of the close causal nexus alleged between the medical negligence and the genetic harm to the Schirmers' child, and because of the absence of the need to calculate the value of nonbeing in determining the amount of damages, the allegations in the Schirmers' complaint state a valid medical claim. The measure of their damages is limited to those consequential, economic damages of raising their disabled child over and above the ordinary child-rearing expenses. But we hold that the Schirmers are not entitled to an award for noneconomic damages. Therefore, the Schirmers' assignment of error is sustained in part and overruled in part.

## THE FACTS

{¶ 2} In their complaint, the Schirmers alleged that genetic testing, conducted after previous unsuccessful pregnancies, disclosed that Mrs. Schirmer carried a balanced translocation of chromosomes 11 and 22. Although it caused her no harm, there was a one-third chance that she would pass the *unbalanced* form of the translocation to her child. A child carrying the unbalanced translocation could have a "third" or extra chromosome 22—a partial trisomy 22. This condition would cause serious birth defects. During Mrs. Schirmer's pregnancy, she instructed the defendants to do all necessary testing to determine whether her fetus carried this genetic defect. The results of the testing would have permitted the Schirmers to decide whether to terminate the pregnancy rather than to bring a severely mentally and physically disabled child into the world.

{¶ 3} The defendants ordered and conducted a chorionic villus sampling ("CVS") test that was the recognized and accepted test to determine the genetic makeup of a fetus by sampling fetal cells. The test result indicated that the fetus was probably a female with the same balanced chromosome translocation as the mother. If, however, the test had incorrectly sampled Mrs. Schirmer's own tissue rather than the tissue of the fetus, the results of the CVS would not have accurately determined the genetic makeup of the fetus. The Schirmers alleged

that the defendants were negligent in not taking the further steps necessary to validate the CVS test results.

{¶ 4} On September 9, 1997, Mrs. Schirmer gave birth to a son, Matthew. Matthew, who is not party to this action, inherited a partial trisomy of chromosome 22 from his mother and is profoundly mentally and physically disabled. He requires round-the-clock care.

{¶ 5} The Schirmers brought suit, claiming that because of the negligent medical advice and testing of the defendants, they were precluded from making an informed decision about whether to proceed with the pregnancy and a delivery that would result in a severely disabled child. They sought damages for (1) the costs related to the pregnancy; (2) economic, consequential losses—the costs of raising and supporting the disabled child; and (3) noneconomic consequential losses—the emotional and physical injuries resulting from the added burden of · raising and supporting the disabled child.

## PROCEDURAL POSTURE

{¶ 6} In March 2002, each defendant filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted pursuant to Civ.R. 12(B)(6). Each argued that Ohio did not recognize the tort of "wrongful birth." Dr. Fitzgerald also argued that if a wrongful-birth claim existed, the Schirmers' damages were limited to their pregnancy-related costs. The trial court overruled the motions to dismiss, stating that it was unable to determine whether the Ohio Supreme Court would "allow an action for 'wrongful birth.' "

{¶ 7} Afterwards, each defendant filed a motion for partial summary judgment on the scope of damages only, seeking a ruling by the trial court that the Schirmers were limited to damages only for pregnancy-related costs.

{¶ 8} The Schirmers subsequently urged, pursuant to Civ.R. 56(F), that the trial court should postpone its ruling on factual determinations regarding the damages issue. They argued that although the defendants' motions were styled as motions for partial summary judgment, they had not raised factual disputes, but, instead, had maintained only that Ohio law did not recognize the consequential damages that they were seeking. They argued that the defendants' motions were more properly considered as motions to dismiss made pursuant to Civ.R. 12(B)(6). The trial court agreed to postpone factual determinations in connection with the pending partial motions for summary judgment, stating that "the Court will rule on the *legal* question of what element of damages may be sought in a wrongful birth case." (Emphasis added.)

{¶ 9} On December 19, 2002, the trial court journalized an entry in which it recorded various stipulations by the parties and entered judgment. First, the

Schirmers consented not to seek damages for the pregnancy-related costs. Second, all parties consented to the trial court's "treating the pending motions for partial summary judgment as motions to dismiss the remaining elements of Plaintiffs' case for failure to state a cognizable claim." Third, the parties stipulated that the trial court's ruling on the pending motions "shall constitute a ruling on questions of law pertaining to, the scope of recoverable damages in a 'wrongful birth' action." The trial court then held that the Schirmers could bring a wrongful-birth action but that Ohio law permitted recovery only for the pregnancy-related costs and not for either economic or noneconomic consequential damages. Since the Schirmers had voluntarily agreed not to seek pregnancy-related damages, the trial court dismissed the complaint.

{¶ 10} A party may move for partial summary judgment. Civ.R. 56(C) and (D) envision a situation where summary judgment is not rendered upon the whole case or for all the relief asked, and where a trial may be necessary on the remaining controverted facts. See *Holeski v. Lawrence* (1993), 85 Ohio App.3d 824, 621 N.E.2d 802. An entry of partial summary judgment must specify the uncontroverted material facts upon which the decision is based. See Civ.R. 56(D); see, also, *Couto v. Gibson, Inc.* (1990), 67 Ohio App.3d 407, 587 N.E.2d 336.

{¶ 11} But there is no provision in the Civil Rules for converting motions for partial summary judgment into motions to dismiss, even by agreement of the parties. A trial court's ruling on summary judgment must be addressed to the evidence properly before it. See Civ.R. 56(C) and (E).

{¶ 12} When, however, a court dismisses a complaint pursuant to Civ.R. 12(B)(6), it makes no factual findings beyond its legal conclusion that the complaint fails to state a claim upon which relief can be granted. The court does not assume the role of fact-finder. See *State ex rel. Drake v. Athens Cty. Bd. of Elections* (1988), 39 Ohio St.3d 40, 528 N.E.2d 1253. Here, the trial court by its own terms, and with the consent of the parties, ruled, without reviewing the evidence, on whether the Schirmers' complaint stated claims for which relief could be granted under Ohio law. We, therefore, construe the trial court's December 19, 2002 entry to be a ruling on renewed motions for dismissal made in accordance with Civ.R. 12(B)(6).

## STANDARD OF REVIEW

{¶ 13} To affirm a dismissal pursuant to Civ.R. 12(B)(6), an appellate court must conclude that it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus; see, also, *State ex rel. Williams Ford Sales, Inc. v. Connor* (1995), 72

Ohio St.3d 111, 647 N.E.2d 804; *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063. Those facts that may be so significant as to entitle the Schirmers to recovery are determined by the substantive law in Ohio.

## THE PRENATAL TORTS

{¶ 14} The Schirmers' claim is commonly termed "wrongful birth." Wrongful-birth claims are brought by the parents of a child born with birth defects. They allege that, due to negligent medical advice or testing, the parents were precluded from making an informed decision about whether to conceive a disabled child or, in the event of a pregnancy, to terminate it. See *Johnson v. Univ. Hospitals of Cleveland* (1989), 44 Ohio St.3d 49, 51, 540 N.E.2d 1370; see, also, *Simmerer v. Dabbas* (2000), 89 Ohio St.3d 586, 587, 733 N.E.2d 1169.

{¶ 15} The Schirmers' claim is distinguishable from two other prenatal torts: (1) wrongful life, and (2) wrongful pregnancy. In a wrongful-life claim, the child contends that negligent genetic testing or sterilization resulted in a birth defect or in birth. On grounds of public policy, the Ohio Supreme Court rejected this claim in *Hester v. Dwivedi* (2000), 89 Ohio St.3d 575, 733 N.E.2d 1161, syllabus. In *Hester v. Dwivedi*, physicians failed to inform the child's mother during pregnancy of test results indicating a possibility of birth defects, thereby depriving the mother of the opportunity to make a fully informed decision whether to terminate her pregnancy by a legal abortion. In rejecting the mother's medical-negligence claim for damages because the child was born with spina bifida rather than aborted, the court responded that it would not weigh the value of life with disabilities against an aborted life. See 89 Ohio St.3d at 580–581, 733 N.E.2d 1161. The court noted that the physicians' negligence was not the cause of the child's birth defects. See id. at 581, 733 N.E.2d 1161.

{¶ 16} Ohio has recognized a claim for wrongful pregnancy where parents sue "for proximate damages arising from the birth of a child subsequent to a doctor's failure to properly perform a sterilization procedure." See *Johnson v. Univ. Hospitals of Cleveland,* 44 Ohio St.3d at 51, 540 N.E.2d 1370; see, also, *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 2 O.O.3d 133, 356 N.E.2d 496. In *Simmerer v. Dabbas* (2000), 89 Ohio St.3d 586, 733 N.E.2d 1169, decided the same day as *Hester,* the court limited the damages available for the tort, holding that medical expenses and emotional-distress damages associated with a child's birth defect were not recoverable in a claim for wrongful pregnancy. In the decision, the court disagreed with the Fourth Appellate District's rationale in *Flanagan v. Williams* (1993), 87 Ohio App.3d 768, 623 N.E.2d 185, that "the extraordinary costs associated with birth defects would be recoverable" in a wrongful-pregnancy action. *Simmerer v. Dabbas* (2000), 89 Ohio St.3d at 591, 733 N.E.2d 1169. Only

three justices joined in the majority opinion and its limitations on those damages recognized and allowed in *Flanagan.*

{¶ 17} In the syllabus paragraph, however, the court again focused on causation, noting that the child's birth defect was not reasonably foreseeable by the physician who had negligently performed the sterilization procedure on the mother, and thus the physician's negligence had not proximately caused the damages associated with the birth defect. See id. at syllabus; see, also, *Simmons v. Hertzman* (1994), 99 Ohio App.3d 453, 457–458, 651 N.E.2d 13 (parents' recovery for wrongful-pregnancy claim was limited to costs associated with pregnancy, particularly because there was no allegation that child's abnormalities were proximately caused by a negligent vasectomy). Justice Pfeifer concurred in the syllabus and judgment only, stating that damages would be recoverable if the parents of the child had sought sterilization to prevent the birth of a child who might have been especially at risk for birth defects. See id. at 592, 733 N.E.2d 1169.

{¶ 18} In the more than 20 years since *Bowman v. Davis* was released, neither the Ohio Supreme Court nor the General Assembly has addressed the viability of the Schirmers' wrongful-birth claim. See *Simmerer v. Dabbas,* 89 Ohio St.3d at 587, 733 N.E.2d 1169. In Ohio, only the Fourth Appellate District in *Flanagan v. Williams,* 87 Ohio App.3d 768, 623 N.E.2d 185, has addressed a wrongful-birth claim. More than 20 states and the District of Columbia have recognized a claim of wrongful birth. See *Bader v. Johnson* (Ind.2000), 732 N.E.2d 1212 (recognizing wrongful-birth claim and listing jurisdictions allowing or disallowing a claim for wrongful birth). At least eight states have judicially barred these claims. See *Grubbs v. Barbourville Family Health Ctr., P.S.C.* (Ky.2003), 120 S.W.3d 682 (Kentucky Supreme Court noting that the decision is not yet final and is not to be cited as authority in Kentucky).

{¶ 19} At least five states have enacted legislation to prohibit recovery in a wrongful-birth negligence suit. See Statutory Remedies for Judicial Torts: The Need For Wrongful Birth Legislation (2001), 69 U.Cin.L.Rev. 1023, 1024; see, e.g., Mo.Stat.Ann. 188.130. Maine, however, has taken action to permit wrongful-birth suits. While declaring that "the birth of a normal, healthy child does not constitute a legally recognizable injury and that it is contrary to public policy to award damages for the birth or rearing of a healthy child" and denying non-economic damages, the Maine legislature permits the recovery of "[d]amages for the birth of an unhealthy child born as the result of professional negligence," including "damages associated with the disease, defect or handicap suffered by the child." Me.Rev.Stat.Ann., Title 24, Section 2931; see, also, Braun & Rabar, Recent Developments In Medicine and Law (2001), 36 Tort & Ins. L.J. 463, 503.

{¶ 20} In *Flanagan v. Williams*, 87 Ohio App.3d at 774–775, 623 N.E.2d 185, the Fourth Appellate District resolved both a wrongful-birth and a wrongful-life claim and recognized a parent's wrongful-birth claim as a legitimate claim for relief in Ohio. While the Supreme Court has questioned the damages available for an injured child under *Flanagan,* the court has not addressed any other portion of that opinion. The *Simmerer* court's reference to the damages in *Flanagan* was not determinative of the wrongful-pregnancy cause it was deciding. It was obiter dicta, agreed to by three justices, and while it provides insight into the three justices' view of the law, it technically has no binding effect on this court's decision in this case. See *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.* (1994), 70 Ohio St.3d 281, 284, 638 N.E.2d 991; see, also, *Suburban Ice Mfg. & Cold Storage Co. v. Mulvihill* (1926), 21 Ohio App. 438, 441, 153 N.E. 204.

{¶ 21} Ultimately, labeling the Schirmers' claim as "wrongful birth" adds nothing to the analysis, and it wrongly implies that the courts have created a new tort. In *Hester,* the Ohio Supreme Court noted, "While these types of cases are commonly labeled 'wrongful life,' 'wrongful pregnancy,' 'wrongful birth,' or 'wrongful living' actions, they are not governed by statutory law as are wrongful death actions. They remain, at their core, medical negligence actions, and are determined by application of common-law tort principles." *Hester,* 89 Ohio St.3d 575, 578, 733 N.E.2d 1161. Though the names "wrongful birth," "wrongful life," or "wrongful pregnancy" are useful monikers for these cases, the Ohio Supreme Court has been explicit in classifying them as "traditional negligence action[s]." See *Bowman v. Davis,* 48 Ohio St.2d at 45, 2 O.O.3d 133, 356 N.E.2d 496.

{¶ 22} As this specific issue has not been addressed by the Ohio Supreme Court, the rule we write today derives from an analysis and synthesis of the language of the Supreme Court in related prenatal-tort cases. Absent guidance by the General Assembly, our effort is to "ensure that the law keeps up with the ever-changing needs of a modern society." See *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 251, 617 N.E.2d 1052. Full development of the elements of the tort will result through litigation and the resolution of future cases, as it is through this means that the common law develops incrementally. See, e.g., *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 449, 628 N.E.2d 46 (Moyer, C.J., dissenting).

{¶ 23} As the starting point, the Supreme Court has held that the Schirmers' medical negligence claim, no matter what it is called, must be "decided by applying the same legal analysis employed in any medical negligence claim"; to prevail they must prove the following elements: (1) a duty running from the medical professionals to the Schirmers, (2) a breach of that duty, (3) damages suffered by the Schirmers, and (4) a proximate causal relationship between the breach of duty and the damages. See *Hester v. Dwivedi,* 89 Ohio St.3d at 578,

733 N.E.2d 1161; see, also, *Simmerer v. Dabbas,* 89 Ohio St.3d at 588–590, 733 N.E.2d 1169.

## THE SCHIRMERS' ALLEGATIONS OF DUTY AND BREACH

{¶ 24} The complaint demonstrates that the Schirmers have stated a claim for relief under traditional medical negligence law. First, the duty of each defendant was to use the degree of care and skill expected of a competent physician or medical practitioner of the same class and under similar circumstances. See *Lownsbury v. Van Buren* (2002), 94 Ohio St.3d 231, 762 N.E.2d 354. The physician is obligated to inform a patient of the diagnosis and the known or inherent risks so that the patient can make an intelligent decision regarding the course of treatment. This duty to disclose arises as a matter of law from the physician-patient relationship. See *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673.

{¶ 25} During oral argument before this court, CHMC attempted to argue that even if the Schirmers could state a claim for relief, the evidence suggested that CHMC had not breached any duty to the Schirmers and was thus not negligent. For purposes of this appeal only, that argument has been waived, as it was not raised below. CHMC's motion to dismiss and motion for partial summary judgment contested solely the damages issue.

{¶ 26} The Schirmers' complaint sufficiently alleged that all the defendants breached their duties of care. They alleged that they consulted the defendants to obtain information and medical guidance with a direct bearing on whether Helen Schirmer would carry her pregnancy to term or exercise her constitutionally guaranteed, but limited, right not to procreate and to terminate the pregnancy. See *Griswold v. Connecticut* (1965), 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510; see, also, *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147. Testing before this pregnancy confirmed that Mrs. Schirmer carried the translocation genetic disorder known to cause severe mental and physical defects in males. For this very reason, she undertook extensive genetic testing under the guidance of the defendants to determine whether the fetus she carried was affected by the Trisomy 22 defect. This was precisely the information the Schirmers had to know to make an informed decision whether to terminate the pregnancy or carry the fetus to term. The failure of one or more of the defendants to conduct followup testing to verify the accuracy of the CVS testing gave rise to a set of facts that would have permitted the Schirmers to allege, and perhaps prove at trial, that their physicians and the laboratory technicians had breached their duty to them.

## CAUSATION

{¶ 27} To survive defendants' motion to dismiss under Civ.R. 12(B)(6), the Schirmers also had to allege a compensable injury proximately caused by the breach of a duty. An indispensable element of a negligence claim is that the act or omission must be the proximate cause of the plaintiffs' injuries. See *Bruni v. Tatsumi.* A negligent act is the proximate cause of an injury if the injury is a natural and probable consequence that, in the light of the circumstances, should have been foreseen or anticipated. See *Mussivand v. David* (1989), 45 Ohio St.3d 314, 321, 544 N.E.2d 265. According to the Schirmers, because the defendants failed to conduct followup tests, they were not informed of their fetus's condition until it was too late to terminate the pregnancy, which resulted in Mrs. Schirmer's carrying to term and giving birth to a severely disabled child.

{¶ 28} This court and the Ohio Supreme Court, in denying recovery to parents and children who have received negligent medical care, have emphasized the tenuous causal link between the negligent act or omission and the resulting harm. *Simmerer v. Dabbas,* syllabus; *Hester v. Dwivedi,* 89 Ohio St.3d at 580–581, 733 N.E.2d 1161; see, also, *Simmons v. Hertzman* (1991), 71 Ohio App.3d 139, 141, 593 N.E.2d 83. Lacking were allegations that the allegedly negligent sterilization procedure, for example, caused the birth defects or increased the probability that any child born after the procedure would suffer from a specific birth defect. See *Simmons v. Hertzman,* 99 Ohio App.3d at 457–458, 651 N.E.2d 13.

{¶ 29} Unlike the parents in *Simmerer* and *Simmons* who, after negligently performed sterilizations, gave birth to children with congenital defects not known to be caused by the negligence, and the child in *Hester,* born with spina bifida after a negligent sterilization, here, the precise defect the Schirmers attempted to discover and avoid by genetic testing—Trisomy 22—occurred. After a review of the complaint's allegations, we cannot say that the Schirmers can prove no set of facts entitling them to recovery on the issue of causation.

## DAMAGES

{¶ 30} The final and most problematic element is the measure of damages proximately caused by the defendants' alleged negligence. To prevail, the Schirmers must identify damages permissible under Ohio law. Under traditional tort principles, a physician is responsible for the foreseeable consequences of his negligent acts. See Restatement of the Law 2d, Torts (1979), Section 917, Comment *e.*

{¶ 31} The defendants acknowledge that, under the holdings of the Ohio Supreme Court's prenatal-tort cases, the Schirmers would be entitled to pregnancy and birth-related costs directly related to carrying a fetus to full term. See,

e.g., *Simmerer v. Dabbas*, 89 Ohio St.3d at 588, 733 N.E.2d 1169. But for the allegedly negligent genetic testing and the medical negligence, the Schirmers must claim that they would have terminated the pregnancy and foregone the medical costs of the pregnancy and delivery. The December 19, 2003 entry, however, states that the Schirmers have stipulated not to seek the pregnancy-related costs and the costs of the delivery as damages at trial.

{¶ 32} The Schirmers do seek as their measure of damages their economic, consequential damages incurred as medical costs and the costs of raising and supporting their disabled child. The Ohio Supreme Court has disallowed these "reasonable child-rearing costs" in wrongful-pregnancy and wrongful-life cases because of the court's reluctance to adopt a measure of damages that so devalues human life. *Simmerer v. Dabbas*, 89 Ohio St.3d at 588–589, 733 N.E.2d 1169, citing *Williams v. Univ. of Chicago Hosp.* (1997), 179 Ill.2d 80, 227 Ill.Dec. 793, 688 N.E.2d 130; see *Hester v. Dwivedi*, 89 Ohio St.3d at 580–581, 733 N.E.2d 1161; see, also, *Simmons v. Hertzman*, 99 Ohio App.3d at 458–459, 651 N.E.2d 13. The Ohio Supreme Court, as matter of public policy, has made it clear that neither a trial court nor a jury may engage in a calculation of damages that includes "comparing the value of being, albeit with handicaps, versus nonbeing." *Hester v. Dwivedi*, 89 Ohio St.3d at 582, 733 N.E.2d 1161.

{¶ 33} The Supreme Court has not rejected those economic, consequential damages claimed by the Schirmers in an action for wrongful birth that are over and above the costs directly related to those required to raise a normal, healthy child to adulthood. In *Hester*, the majority opinion suggested that while a child born with defects after negligent medical tests could not state a claim for damages because the calculation required valuing being and non-being, the proscription would not apply to the child's mother. Albeit in dicta, the majority noted that while the child has no claim, if the medical negligence prevents the mother from acting upon genetic testing information, she "*can* claim to be injured in that she was deprived of the choice to avoid [the financial obligations associated with parenthood] by terminating the pregnancy." (Emphasis added.) Id. Justice Pfeifer dissented but approved of permitting parents injured by negligent genetic counseling to recover the financial costs of raising a child. See id. at 585, 733 N.E.2d 1161.

{¶ 34} While cognizant of the three-justice majority's reluctance in *Simmerer* to award extraordinary damages—the consequential, economic damages of raising a disabled child over and above the ordinary child-rearing expenses for a normal child—in light of the court's discussion in *Hester*, we conclude that this is a proper measure of damages because of (1) the causal nexus alleged between the medical negligence and the predictable genetic defect occurring in the Schirmers' child, and (2) the absence of the need to calculate the value of non-being in

determining these economic, consequential damages. This determination is, likewise, consistent with the General Assembly's direction under its tort-reform legislation, which allows an award for economic damages but limits them, as a matter of policy, for emotional injury and pain and suffering. See, generally, *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062; see, also, S.B. No. 281, effective April, 11, 2003.

■ {¶ 35} A claim for medical negligence brought by the parents of a child born with birth defects alleging that negligent medical advice or testing precluded them from making an informed decision about whether to conceive a potentially handicapped child or, in the event of a pregnancy, to terminate it, states a claim for relief where the extraordinary economic, consequential damages of raising a disabled child are proximately caused by the negligence. Calculating and assessing those damages does not involve the Supreme Court's principal concern with the difficulty in weighing life.

■ {¶ 36} Since the calculation of the Schirmers' last claimed measure of non-economic, consequential damages—the emotional and physical injuries to them resulting from the added burden of raising and supporting a disabled child—does require the court or jury to weigh the value of being and non-being, the Schirmers cannot, as a matter of law, recover for their noneconomic damages.

## CONCLUSION

{¶ 37} The Schirmers' assignment of error is sustained in part. The dismissal of the Schirmers' complaint for failure to state a claim for relief is reversed, and this case is remanded to the trial court for further proceedings. Upon remand, the Schirmers may adduce facts to prove the elements of a medical negligence claim, including the extraordinary consequential, economic costs necessary to treat the birth defect and the additional medical or educational costs attributable to the birth defect during the child's minority.

Judgment reversed
and cause remanded.

DOAN, P.J., and HILDEBRANDT, J., concur.