SCHIRMER ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* MT.
AUBURN OBSTETRICS & GYNECOLOGIC ASSOCIATES, INC.
ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as *Schirmer v. Mt. Auburn Obstetrics & Gynecologic
Assoc., Inc.,* 108 Ohio St.3d 494, 2006-Ohio-942.]

(No. 2004–0296—Submitted April 13, 2005—Decided March 3, 2006.)

O'CONNOR, J.

{¶ 1} We are asked to consider whether the parents of an unhealthy child born following negligent genetic counseling or a negligent failure to diagnose a fetal defect or disease may bring suit for the costs of having to raise and care for an impaired child. We hold that such a suit may be brought under traditional medical-malpractice principles and that the costs recoverable are those arising from the pregnancy and birth of the child. No consequential economic or consequential noneconomic damages may be recovered for the care and rearing of the child.

## I. Facts and Procedural History

{¶ 2} Plaintiffs-appellants and cross-appellees, Helen and Richard Schirmer, initiated this action by filing a complaint asserting medical negligence and lack of informed consent against various defendants, including appellees and cross-appellants, Mt. Auburn Obstetrics & Gynecologic Associates, Inc., Kevin R. Fitzgerald, M.D., Children's Hospital Medical Center, Martha Walker, M.S., and Howard M. Saal, M.D. The Schirmers alleged that defendants did not adhere to

the required standards of care in monitoring Mrs. Schirmer's pregnancy prior to the 1997 birth of their son, Matthew. The Schirmers also claimed failure to warn and failure to obtain the Schirmers' informed consent for treatment methods and modalities.

{¶ 3} The pertinent facts are as follows.[1] Before conceiving Matthew, Mrs. Schirmer had several obstetrical problems that caused the Schirmers to seek genetic testing and counseling. The testing revealed that Mrs. Schirmer has a chromosomal condition, referred to as a balanced translocation of chromosomes 11 and 22, which puts her at risk for bearing children with serious birth defects.

{¶ 4} After conceiving Matthew, Mrs. Schirmer underwent a chorionic villus sampling ("CVS") test. The testing indicated that the fetus was probably a female with the same chromosomal condition as Mrs. Schirmer and would therefore develop normally. Mrs. Schirmer also underwent several ultrasound tests to rule out abnormalities of the fetus. It was reported to the Schirmers that the studies showed that the fetus was developing normally.

{¶ 5} On September 9, 1997, Mrs. Schirmer gave birth to Matthew. Subsequent genetic testing of Matthew revealed that he had inherited a structurally abnormal extra chromosome known as Trisomy 22. The condition caused Matthew to have severe and permanent disabilities.

{¶ 6} The Schirmers alleged that because the genetic makeup of the fetus appeared to match that of Mrs. Schirmer, a possibility existed that the CVS had erroneously sampled maternal rather than fetal tissue. They argue that the defendants negligently performed and interpreted the diagnostic tests and that they were negligent in their failure to recommend further tests that would have revealed Matthew's genetic abnormality. They claim that had they received such information, they would have opted to terminate the pregnancy.

{¶ 7} In their complaint, the Schirmers asserted three claims for damages: (1) damages relating to Mrs. Schirmer's pregnancy and delivery of Matthew (i.e., obstetric costs and pain and suffering of pregnancy and delivery), (2) costs associated with raising and supporting a disabled child (i.e., consequential economic damages), and (3) emotional and physical injuries to the Schirmers resulting from the added burdens of raising and supporting a disabled child (i.e., consequential noneconomic damages).

{¶ 8} After months of proceedings before the trial court, the court journalized an agreed entry in which it recorded various stipulations by the parties and entered judgment. The Schirmers dismissed their claim for damages relating to

---

1. Because the trial court dismissed the complaint on a Civ.R. 12(B)(6) motion, we must accept the allegations of the complaint as true. *Maitland v. Ford Motor Co.,* 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶ 16.

the pregnancy and pain and suffering of delivery of Matthew. The court then granted defendants' motions to dismiss the remaining counts of the Schirmers' complaint for failure to state a cognizable claim. Defendants argued that Ohio does not allow recovery for consequential economic and consequential noneconomic damages in a wrongful-birth action. The trial court agreed, finding, "Ohio law allows only the recovery of damages relating to the pregnancy and pain and suffering of delivery in wrongful birth actions," thereby adopting the "limited damages" rule, explained below. Because the Schirmers had dismissed their claim for such damages, the remainder of their complaint was dismissed for lack of legally recoverable damages.

{¶ 9} The Schirmers appealed. The appellate court affirmed in part and reversed in part, holding that "because of the close causal nexus alleged between the medical negligence and the genetic harm to the Schirmers' child, and because of the absence of the need to calculate the value of nonbeing in determining the amount of damages, the allegations in the Schirmers' complaint state a valid medical claim. The measure of their damages is limited to those consequential, economic damages of raising their disabled child over and above the ordinary child-rearing expenses." 155 Ohio App.3d 640, 2003-Ohio-7150, 802 N.E.2d 723, ¶ 1. But the court held that the Schirmers could not recover noneconomic damages, holding that such damages require a court to weigh the value of being and nonbeing, which is impermissible. Id. at ¶ 36.

{¶ 10} This cause is now before this court upon the acceptance of the Schirmers' discretionary appeal and the defendants' cross-appeal. Combined, the direct appeal and cross-appeal contest the existence of a "wrongful birth" tort in Ohio and the damages available under such a tort.

## II. The Prenatal Torts

{¶ 11} We have examined the so-called prenatal torts, or birth-based medical-malpractice actions, on several occasions. There are three typical categories of these actions: wrongful pregnancy, wrongful birth, and wrongful life. "In a *wrongful pregnancy* action, one or both parents of a child born following a negligently performed sterilization procedure bring suit for the costs of having an unplanned child. * * * Most United States jurisdictions recognize this cause of action. * * * In a *wrongful birth* action, the parents of an unhealthy child born following negligent genetic counseling or negligent failure to diagnose a fetal defect or disease bring suit for the costs of having to raise and care for an impaired child, arguing that they were wrongfully deprived of the ability to avoid or terminate a pregnancy to prevent the birth of a child with the defect or disease." (Emphasis sic.) *Simmerer v. Dabbas* (2000), 89 Ohio St.3d 586, 587, 733 N.E.2d 1169. Until today, the legitimacy of this second cause of action had not been addressed by this court. "Finally, in a *wrongful life* action, an

unhealthy child born following either a negligently performed sterilization of one of his or her parents or negligent genetic counseling or testing argues that he or she has been damaged by being born at all. This court has rejected this cause of action, as have most other jurisdictions." (Footnotes omitted and emphasis sic.) Id.

{¶ 12} The Schirmers assert that their claim is one for wrongful birth, but the defendants argue that the claim is actually nothing more than a derivative of a claim for wrongful life. Defendants quote a Missouri case in which the court held that no cause of action for either wrongful life or wrongful birth could be maintained. *Wilson v. Kuenzi* (Mo.1988), 751 S.W.2d 741. The case involved both a wrongful-life suit brought by a child afflicted with Down syndrome and a wrongful-birth suit brought by the child's parents. The court, quoting a separate opinion in a case from the Court of Appeals of New York, held that a wrongful-birth claim could not be maintained in Missouri because (1) causation for wrongful birth is even more remote than for wrongful life because the parents are seeking to recover for an injury they have suffered as a result of the alleged injury to the child and (2) "[a] parent's right to recover expenses occasioned by an injury to the child ' "is based upon and arises out of the negligence which causes the injury to the child." The injury to the child results in a twofold action, one for the father and one for the child.' [*Becker v. Schwartz* (1978), 46 N.Y.2d 401, 420, 413 N.Y.S.2d 895, 386 N.E.2d 807 (Wachtler, J., dissenting in part), quoting *Psota v. Long Island RR. Co.* (1927), 246 N.Y. 388, 396, 159 N.E. 180.] Thus the parents' suit for the pecuniary losses is derivative; it cannot stand alone." *Wilson,* 751 S.W.2d at 745. Therefore, "[i]f the child cannot establish a good cause of action to recovery [sic] for its injury, the parents' suit for collateral losses, flowing from the injury to the child, must also fail." Id. We are not persuaded by this reasoning.

{¶ 13} The causation issue in this case can be examined in terms of the pregnancy rather than the life of the child, as will be discussed in greater detail below. With respect to the cause of action itself, the parents' claim is unique in that the injury to the parents is a lost opportunity to terminate the pregnancy—a claim sounding in medical malpractice rather than wrongful life or wrongful birth. *Bader v. Johnson* (Ind.2000), 732 N.E.2d 1212, 1219–1220.

{¶ 14} This discussion highlights the unfortunate dependence on terms such as "wrongful life" and "wrongful birth." As we noted in *Hester v. Dwivedi:*

{¶ 15} "[O]verreliance on [these terms] creates the risk of confusion in applying principles of tort law to actual cases, and may compound or complicate resolution of the case. * * * Designating cases in this manner does serve a purpose in providing a shorthand description of the kinds of facts asserted by the plaintiffs. Nevertheless, determining that the instant case presents a 'wrongful life' claim

does not confer a special legal status on it, nor change the traditional legal analysis used to determine its merits.

{¶ 16} "Rather, such cases are properly decided by applying the same legal analysis employed in any medical negligence claim." Id. at 578, 733 N.E.2d 1161. It is within that traditional framework that we analyze this case.

## III. Medical Negligence

{¶ 17} Liability based on the alleged negligence of a medical professional requires proof of four elements: (1) a duty running from the defendant to the plaintiff, (2) a breach of that duty by the defendant, (3) damages suffered by the plaintiff, and (4) a proximate causal relationship between the breach of duty and the damages. *Hester v. Dwivedi*, 89 Ohio St.3d at 578, 733 N.E.2d 1161. With respect to the first two elements of medical negligence, duty and breach, the appellate court noted that the Schirmers sufficiently alleged these elements in their complaint. Neither of those elements is before this court, and we consequently do not address them.

## A. Damages

{¶ 18} To properly evaluate the potential damages in this case, it is imperative to revisit the evolution of the prenatal tort cases. In *Johnson v. Univ. Hosp. of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370, a mother alleged that her doctors had negligently performed a tubal ligation, which she had undergone for sterilization purposes. Johnson became pregnant after the procedure and later gave birth to a baby girl. She sought damages for pain and suffering arising out of the pregnancy and birth, for injury to her person caused by the increased care, responsibility, and work involved in raising the child, and for child-rearing expenses. We held that Ohio does not allow the award of damages for child-rearing expenses in a wrongful-pregnancy action brought by parents. "In a 'wrongful pregnancy' action, Ohio recognizes the 'limited damages' rule which limits the damages to the pregnancy itself and does not include child-rearing expenses. The extent of recoverable damages is limited by Ohio's public policy that the birth of a normal, healthy child cannot be an injury to her parents." Id. at paragraph two of the syllabus.

{¶ 19} In *Hester v. Dwivedi*, we next considered the case in which a child is born with birth defects. In that case, the father argued on behalf of his child, Alicia, that she had suffered legally compensable injury because she was born. *Hester* was therefore a case of wrongful life as opposed to wrongful pregnancy. We recognized that it was implicit in the child's argument that the defendants should be held liable to her mother, Patricia, based on breach of the duty to convey to Patricia the results of tests showing fetal abnormalities:

{¶ 20} "Because the [parents] assert that Patricia would have opted for abortion [had she known of Alicia's condition], adoption of the proposition that Alicia was thus injured would necessitate our acceptance of the proposition that abortion, therefore nonexistence, would have been better for Alicia than life accompanied by physical and/or mental deficiencies. We would, in effect, be making a judicial determination that the trial court is able to adjudicate that it would have been better for Alicia had she not been born. * * * The proposition that it would have been better for Alicia to have not been given life is inconsistent with our recognition of the value of life, as reflected in * * * precedent. It also would place the court in the position of comparing the value of being, albeit with handicaps, versus nonbeing.

{¶ 21} "We remain committed to the proposition * * * that such weighing falls within the ambit of moral, philosophical, and religious considerations rather than judicial." Id. at 581–582, 733 N.E.2d 1161.

{¶ 22} In this case, the Schirmers argue not that Matthew suffered damages as a result of his being born rather than aborted, but rather that they, as his parents, suffered damages. In *Hester*, we anticipated a case such as this in dicta. We stated, "Abortion would, of course, have relieved the Hesters from the joys and benefits of parenthood, as well as the financial obligations associated with parenthood. If appellees failed to provide Patricia with the disconcerting test results, as alleged in the complaint, Patricia can claim to be injured in that she was deprived of the choice to avoid those expenses by terminating the pregnancy." Id.

{¶ 23} The appellate court in this case used this language to conclude that the consequential, economic damages stemming from the cost of raising a disabled child over and above the ordinary child-rearing expenses for a normal child is a proper measure of damages in part because of "the absence of the need to calculate the value of non-being in determining these economic, consequential damages." 155 Ohio App.3d 640, 2003-Ohio-7150, 802 N.E.2d 723, ¶ 34. But the calculation is not as straightforward as the appellate court assumed. Granted, courts make economic calculations comparing life without disability versus life with disability in tort cases all the time: but in such instances, there is direct responsibility for the condition—proximate cause. As we will discuss below, there was no tort committed here that resulted in the damages to Matthew's genes. Further, it is simplistic to state merely that the damages are based upon the expenses incurred in raising Matthew with a disability over and above those expenses that his parents would incur if he were not disabled. The appellate court ignored the underlying but critical fact that Mrs. Schirmer claims that she would have terminated this pregnancy had she known the condition was present. We cannot simply skirt that claim and award damages based on a calculation of

life versus impaired life, because unimpaired life was never a possibility in this situation. The crux of this case is a comparison of nonexistence versus existence, albeit impaired. As noted in *Hester*, "the law does not sanction an award of damages based on the relative merits of ' "being versus nonbeing." ' " Id. at 580, 733 N.E.2d 1161, quoting *Anderson v. St. Francis–St. George Hosp., Inc.* (1996), 77 Ohio St.3d 82, 85, 671 N.E.2d 225, quoting *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 2 O.O.3d, 133, 356 N.E.2d 496, fn. 3.

{¶ 24} This holding remains intact. Nothing in the case at bar suggests a rationale for overturning the precedent precluding recovery when the measure of damages requires a valuation of being versus nonbeing. See, generally, *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus (setting forth criteria for overruling precedent). Accordingly, consequential economic damages are unrecoverable in situations such as the one at bar, and the appellate court's judgment on this issue is reversed.

{¶ 25} The appellate court properly opined that consequential noneconomic damages require a valuation of being versus nonbeing. A judge or jury would be asked to weigh the emotional and physical tolls resulting from raising and supporting a disabled child versus not having a child at all. No such damages are recoverable.

{¶ 26} Less problematic are the damages sought for Mrs. Schirmer's pregnancy and delivery of Matthew. It is self-evident that when negligent medical care occurs in the course of a pregnancy, the parents may be deprived of the opportunity for informed decisionmaking concerning the health of the mother and the child. In such circumstance, we look to our decision in *Johnson* on the proper measure of damages in situations in which a pregnancy *occurs* through alleged medical negligence (wherein the parents' decision *to avoid pregnancy* is impaired by the negligence of another) and extend that decision to cover those situations in which a parent is denied the opportunity for an informed decisionmaking process during pregnancy because of alleged medical negligence. As in wrongful-pregnancy cases, we find the "limited damages" rule applicable to wrongful-birth cases. Damages are therefore limited to costs arising from the continuation of the pregnancy after the negligent act and for the birth of the child. See *Johnson,* 44 Ohio St.3d 49, 540 N.E.2d 1370, paragraph two of the syllabus.

## B. Causation

{¶ 27} "The law of negligence does not hold a defendant liable for damages that the defendant did not cause." *Hester,* 89 Ohio St.3d at 583, 733 N.E.2d 1161. The damages discussed above (pregnancy- and birth-related, consequential economic, and consequential noneconomic) must still be analyzed in terms of

proximate cause. We hold that the consequential economic and noneconomic damages suffered by the Schirmers lack a causal link to the alleged negligence of defendants in this case, but that pregnancy- and birth-related costs are sufficiently linked to allow recovery.

{¶ 28} In *Hester*, we held that the child, Alicia, could prove no set of facts justifying her recovery of damages based on the conduct of the appellee doctors. "[A]ppellees neither caused [Alicia's] condition itself, nor could they have treated either Patricia or Alicia so as to allow Alicia to be born without spina bifida. Thus, the only injury causally related to the appellees' breach of duty was the deprivation of the chance to make a fully informed decision whether to continue the pregnancy. That decision, legally, belonged to Patricia Hester." Id. at 581, 733 N.E.2d 1161.

{¶ 29} Although *Hester* was characterized as a wrongful-life claim brought on behalf of the child, we find the reasoning applicable to the Schirmers' wrongful-birth claim as well. Matthew's condition was determined at his conception. Defendants did nothing to cause his condition and could not have prevented it by treating either Matthew or his mother. Accordingly, in this case, as in *Hester*, the only causally related injury is Mrs. Schirmer's loss of the opportunity to decide to terminate her pregnancy.

{¶ 30} It is important to note that the issue of whether abortion should be considered a proper course of treatment during prenatal care is not before this court. Regardless of the multitude of moral, religious, policy, and legal arguments inherent in the abortion debate, the holding today merely recognizes that medical negligence during prenatal care that affects the parents' ability to decide whether to continue the pregnancy may be actionable.

## IV. Conclusion

{¶ 31} For the foregoing reasons, we hold that parents of an unhealthy child born following negligent genetic counseling or negligent failure to diagnose a fetal defect or disease may bring a medical-malpractice action for those costs arising from the pregnancy and birth of the child. As the Schirmers have voluntarily dismissed the claim for such damages, they cannot recover for those injuries. The trial court properly dismissed the Schirmers' claims for consequential economic and noneconomic damages.

## V. Judgment

{¶ 32} Accordingly, our judgment is as follows:

{¶ 33} 1. Parents of an unhealthy child born following negligent genetic counseling or a negligent failure to diagnose a fetal defect or disease may bring a medical-malpractice action for those costs arising from the pregnancy and birth

of the child. As the Schirmers have voluntarily dismissed the claim for such damages, they cannot recover for those injuries.

{¶ 34} 2. That part of the judgment of the court of appeals holding that the consequential, economic costs of raising the Schirmers' disabled child over and above ordinary child-rearing expenses may be recoverable is reversed.

{¶ 35} 3. That part of the judgment of the court of appeals holding that the Schirmers may not recover noneconomic damages is affirmed.

{¶ 36} 4. That part of the judgment of the court of appeals remanding the cause for further proceedings is reversed, and the judgment of the trial court dismissing the cause is reinstated.

Judgment accordingly.

MOYER, C.J., concurs in the syllabus and in all parts of the judgment.

RESNICK and PFEIFER, JJ., concur in the syllabus and part one of the judgment, and the portion of the opinion relating thereto, and dissent as to parts two, three, and four of the judgment.

LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur in parts two, three, and four of the judgment, but for reasons different from those stated in the opinion, and dissent in all other respects.

---

**MOYER, C.J., concurring in syllabus and judgment only.**

{¶ 37} I write separately to make clear my reasons for agreeing with the judgment rendered in this case.

{¶ 38} As we recognized in *Hester v. Dwivedi* (2000), 89 Ohio St.3d 575, 578, 733 N.E.2d 1161, cases of this type are medical-negligence actions that are determined according to common-law tort principles. When traditional legal analysis is used, this case is neither complicated nor novel. As the lead opinion relates, the first two elements of medical negligence—duty and breach—are not at issue in this case. Instead, we are asked to determine whether the Schirmers are able to establish the last two elements of medical negligence: causation and damages.

{¶ 39} The Schirmers do not assert that the defendants caused the preexisting genetic defect itself, and it is undisputed that the defect was untreatable. The Schirmers assert that the injury caused by the defendants' breach was the loss to them of the opportunity to make a fully informed decision whether to terminate a pregnancy—a decision that in this case belonged to Helen Schirmer. *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147.

{¶ 40} Causation requires a factual nexus between the breach and injury (i.e., actual cause) and a significant degree of connectedness that justifies imposing

liability (i.e., proximate cause). *Hester*, 89 Ohio St.3d at 581, 733 N.E.2d 1161. In *Hester*, a child brought an action based on her doctors' alleged negligent genetic counseling and failure to diagnose a fetal defect. The child alleged that she was injured by being born with defects. We concluded that a doctor's negligent prenatal testing cannot proximately cause a child to be born with defects. Id. at 583, 733 N.E.2d 1161. In a wrongful-birth case, such as the instant case, an entirely different injury is alleged. The defendants owed a duty to Helen Schirmer to perform an accurate genetic test on the fetus. Defendants breached that duty. Mrs. Schirmer alleges that defendants' breach of duty denied her the opportunity to make an informed decision whether to terminate her pregnancy. Thus, instead of asking whether the defendants' negligence proximately caused the child's defects, which it clearly did not, we must ask whether the defendants' negligent genetic testing caused the mother to make an ill-informed decision, and, if it did, what damages may result from the breach.

{¶ 41} Helen Schirmer clearly would not have been deprived of her right to make a fully informed reproductive decision but for the negligent genetic testing. The Schirmers sought the defendants' services expressly to determine whether their child would be born with a specific genetic abnormality. Furthermore, because the breach was the sole reason that Helen Schirmer was not able to make a fully informed decision, the negligence was directly connected to that injury. Thus, the facts as alleged demonstrate that the breach, the failure to correctly diagnose a preexisting genetic defect, proximately caused the injury, the loss of the opportunity to make an informed decision whether to terminate the pregnancy. We must then determine what costs flow from the injury.

{¶ 42} On the basis of misinformation, Helen Schirmer decided not to terminate her pregnancy, but had she done so, the Schirmers would have avoided various significant costs. Those costs include medical expenses and loss of consortium during pregnancy and birth, emotional distress during that time, Helen Schirmer's lost wages, if any, during a reasonable length of time, her pain and suffering during the pregnancy and childbirth, and the ordinary and extraordinary costs of raising Matthew. Several states recognize many of these costs as damages. See, e.g., *Arche v. United States Dept. of the Army* (1990), 247 Kan. 276, 292, 798 P.2d 477 (extraordinary medical expenses and other pecuniary costs related to disability until child reaches age of majority); *Haymon v. Wilkerson* (D.C.App.1987), 535 A.2d 880, 885–886 (extraordinary medical and other health-care costs); *Smith v. Cote* (1986), 128 N.H. 231, 242–246, 513 A.2d 341 (medical and educational costs and extra burden of care attributable to child's impairment beyond age of majority); *Jacobs v. Theimer* (Tex.1975), 519 S.W.2d 846, 850 (expenses reasonably necessary for treating and caring for physical impairment of child); *Dumer v. St. Michael's Hosp.* (1975), 69 Wis.2d 766, 776, 233 N.W.2d 372 (additional medical and supportive expense occasioned by deformities of

child). Unlike the lead opinion, I believe there is a causal link between the defendants' breach and these costs. Nevertheless, the lead opinion is correct in applying our precedent to limit damages to pregnancy- and birth-related costs.

{¶ 43} In *Johnson v. Univ. Hosps. of Cleveland* (1989), 44 Ohio St.3d 49, 59, 540 N.E.2d 1370, fn. 8, we recognized that medical expenses and loss of consortium during pregnancy and birth, emotional distress during that time, lost wages of the mother during a reasonable length of time, and the mother's pain and suffering during pregnancy and childbirth are legally cognizable injuries when an attempt to avoid pregnancy has been thwarted by negligent sterilization. The instant case presents similar circumstances of unwanted pregnancy, the difference being that, in this type of case, the status "unwanted" arises at the moment of breach and not at conception. Accordingly, we follow our holding in *Johnson* that certain pregnancy- and birth-related damages are legally cognizable.

{¶ 44} Although the Schirmers were deprived of the opportunity to make an informed choice to avoid the expenses associated not only with pregnancy and birth but also with child rearing, allowing postbirth damages would be inconsistent with Ohio's public policy recognizing the value of human life. We held in *Johnson* that "a normal, healthy child" is not an injury to parents. Id., paragraph two of the syllabus. Our holding was limited to normal and healthy children because the child in *Johnson* was a normal, healthy child. We were not required to decide whether our holding would apply to abnormal, unhealthy children. The instant case requires us to decide that question.

{¶ 45} Ohio's public policy is that the birth of a human being is not an injury to parents. Were this court to conclude that life could be an injury, we would place courts in a position of weighing being versus nonbeing. We have concluded that courts will not—and are not equipped to—resolve such questions. *Hester*, 89 Ohio St.3d at 582, 733 N.E.2d 1161. It is not for courts to determine whether a parent or child is better or worse off after a child's birth, regardless of the health of the child. Parents may, and often do, enjoy rearing impaired children. Extraordinary expense is associated with rearing a genetically unhealthy child; however, significant expense is associated with rearing any child. We will not hold that a genetically unhealthy child is inherently less valuable than a healthy child and thereby force courts to decide which children qualify as unhealthy and what costs qualify as extraordinary. A parent does not suffer legally cognizable damage based on the fact that a child was born rather than aborted. Thus, the Schirmers have not suffered damages based on costs associated with that portion of Matthew's life that occurs after birth.

{¶ 46} Finally, it is asserted that the issues presented in this appeal are more appropriately resolved by the General Assembly. The law of torts typically is

created by courts in the absence of legislative action. This court and courts of appeals over a period of several years have developed a body of law based on the traditional tort principles applied in the lead opinion.[2] Because the General Assembly has remained silent, it is appropriate that we continue to resolve the issues presented in these cases based on our well-established tort jurisprudence.

---

PFEIFER, J., concurring in part and dissenting in part.

{¶ 47} I agree with the lead opinion's stated approach in deciding this case: it should be treated as a medical-malpractice matter, with the parents' injury being the lost opportunity to terminate the pregnancy. I dissent because the damages available to the parents should include the economic and noneconomic costs associated with raising a child with a medical condition that the defendants represented to the parents was not present.

{¶ 48} What damages flow from the alleged negligence of the medical providers in this case? The Schirmers decided to continue Mrs. Schirmer's pregnancy based upon the representations of the defendants. Because of that decision, the Schirmers were faced with not only the cost of the pregnancy and birth, but also the economic and noneconomic costs attendant to raising Matthew. The leading Ohio case in regard to damages in birth-based malpractice actions is *Johnson v. Univ. Hosps. of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370. *Johnson* held that for reasons of public policy, "the birth of a normal, healthy child cannot be an injury to her parents." Id. at paragraph two of the syllabus. The court's inclusion of the words "normal" and "healthy" in that holding is significant. In holding that "a normal, healthy child" cannot be an injury, the court implied that a victim of negligent prenatal counseling might still recover damages for extraordinary medical expenses associated with raising a child with serious birth defects.

{¶ 49} This court considered a case involving a child born with a birth defect in *Simmerer v. Dabbas* (2000), 89 Ohio St.3d 586, 733 N.E.2d 1169. In *Simmerer*,

---

2. See *Simmerer v. Dabbas* (2000), 89 Ohio St.3d 586, 733 N.E.2d 1169 (denying unforeseeable damages resulting from negligent sterilization); *Hester v. Dwivedi* (2000), 89 Ohio St.3d 575, 733 N.E.2d 1161 (denying child's claim based on negligent prenatal testing); *Anderson v. St. Francis–St. George Hosp., Inc.* (1996), 77 Ohio St.3d 82, 671 N.E.2d 225 (denying claim that patient was injured when hospital revived him contrary to his direction not to perform extraordinary efforts to preserve his life); *Johnson v. Univ. Hosps. of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370 (limiting damages in a claim based on negligent sterilization); *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 2 O.O.3d 133, 356 N.E.2d 496 (recognizing cause of action based on negligent sterilization but not deciding the issue of damages); *Flanagan v. Williams* (1993), 87 Ohio App.3d 768, 623 N.E.2d 185 (recognizing cause of action where parents allege negligent failure to diagnose a fetal defect or disease).

the defendant doctor had negligently performed a sterilization procedure (as in *Johnson*), and the plaintiff mother ultimately became pregnant. Her son, Steven, was born with a fatal heart condition and died when he was 15 months old. Acknowledging that *Johnson* limited any recovery to those amounts exceeding the cost of raising a normal child, the plaintiff parents sought recovery for the extraordinary costs and emotional suffering associated with Steven's heart defect. In the syllabus, this court held that "[m]edical expenses and emotional distress damages associated with a child's birth defect are not recoverable in a wrongful pregnancy action, when the child's birth defect was not reasonably foreseeable by the defendant who negligently performed the sterilization procedure."

{¶ 50} Thus, in *Simmerer*, the court based its decision on the lack of foreseeability of the injury, rather than the lack of an injury, in the birth of a medically compromised baby. The *Simmerer* majority was extraordinarily slim, and the opinion left the door open for a cause of action in which the child's birth defect was foreseeable by the negligent doctor. In the 4–3 vote in *Simmerer*, I joined the majority only as to its syllabus and judgment, writing in concurrence:

{¶ 51} "I concur to make clear that the causal chain was too extended in this case for the negligent doctor to be liable for damages related to Steven Simmerer's heart defect. However, if the Simmerers had sought a permanent sterilization in order to prevent the birth of a child who might be especially at risk for birth defects, I would hold differently. In that instance, I believe there would be enough of a direct link to the child's condition that the doctor who negligently performed the sterilization procedure could be held liable."

{¶ 52} Today's case presents the direct link necessary to establish foreseeability on behalf of the medical provider. This is not a negligent-sterilization case like *Johnson* and *Simmerer*, in which the parents were seeking to prevent conception. The plaintiffs here sought testing to determine whether they should continue an already existing pregnancy. They sought guidance regarding one particular condition that they knew could lead to serious defects. The plaintiffs allege that the medical providers performed their duties negligently, informing the parents that their child was developing normally. However, Matthew was born with serious and permanent disabilities that would have been detected had the tests been performed properly. The birth of a child with a grave medical condition was a foreseeable result of the alleged negligence of the medical providers in this case.

{¶ 53} The holdings in *Johnson* and *Simmerer* could easily be seen as leading to the allowance of recovery of the extraordinary costs associated with raising a disabled child if the child's condition is the foreseeable result of negligent prenatal care. The lead opinion veers from this clear path by essentially expanding on the public policy of *Johnson* to say that *no* birth can be an injury to

parents. That is a compelling and laudable statement and an entirely appropriate type of decision for the state's highest court to make. However, what is couched as a medical-malpractice analysis is essentially a public-policy argument. Public-policy concerns are an important province of this court. But I think that public policy requires a different result.

{¶ 54} Prenatal counseling is an area of medicine in which developing science and the desperation of would-be parents converge. Medical science has enabled us to make agonizing decisions regarding life and death. We can peer into the womb and determine a lot about what type of person the fetus will become. And parents can decide whether they want to face the burden of whatever disabilities are preordained by the child's genetics. Even if doctors were perfect, the choices would be excruciating. But doctors can be wrong. Doctors can overstate their knowledge. Patients must be equipped to defend themselves against the hubris of the medical profession. Traditionally, the threat of suit has been part of the system we rely on to ensure the responsibility of doctors. Should prenatal counseling be the only area in which doctors are free from liability for negligence? Can doctors assume the mantle of fate and tell parents whether or not they will be faced with the financial and emotional costs of a profoundly injured child, but bear no responsibility to those parents when they are wrong?

{¶ 55} Finally, it should be noted that through the court's decision today, Ohio has staked out a unique position in regard to damages in this type of case. Leading treatises suggest that Ohio will be the only state that recognizes a cause of action in negligent-prenatal-counseling cases—in cases that do not involve a negligently performed sterilization—but limits damages to the costs arising from the pregnancy and the birth of the child. See 62A Am.Jur.2d (2005) Prenatal Injuries, Section 117; 4 Lee & Lindahl, Modern Tort Law: Liability and Litigation (2d Ed.2002), Section 31:20; 2 Stein on Personal Injury Damages (3d Ed.1997) 12–28 to 12–29, Section 12:7. The other jurisdictions that recognize the cause of action allow for at least the recovery of "the extraordinary expenses that are attendant to the care and treatment of the afflicted child, [not including] the expenses associated with the raising of a normal, healthy child." *Siemieniec v. Lutheran Gen. Hosp.* (1987), 117 Ill.2d 230, 259, 111 Ill.Dec. 302, 512 N.E.2d 691. See, also, *Keel v. Banach* (Ala.1993), 624 So.2d 1022; *Lininger v. Eisenbaum* (Colo.1988), 764 P.2d 1202; *Kush v. Lloyd* (Fla.1992), 616 So.2d 415; *Smith v. Cote* (1986), 128 N.H. 231, 513 A.2d 341; *Procanik v. Cillo* (1984), 97 N.J. 339, 478 A.2d 755; *Canesi v. Wilson* (1999), 158 N.J. 490, 730 A.2d 805; *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807; *Harbeson v. Parke–Davis, Inc.* (1983), 98 Wash.2d 460, 656 P.2d 483; *Haymon v. Wilkerson* (D.C.1987), 535 A.2d 880; *Garrison v. Med. Ctr. of Delaware, Inc.* (Del.1989), 581 A.2d 288; *Arche v. United States Dept. of the Army* (1990), 247 Kan. 276, 798

P.2d 477; *Thibeault v. Larson* (Me.1995), 666 A.2d 112; *Viccaro v. Milunsky* (1990), 406 Mass. 777, 551 N.E.2d 8.

RESNICK, J., concurs in the foregoing opinion.

---

**O'DONNELL, J., dissenting.**

{¶ 56} A medical-malpractice action for wrongful birth following either negligent genetic testing or failure to diagnose a fetal defect should not become a cognizable claim at law under traditional tort analysis absent legislative authorization. Accordingly, I respectfully dissent from today's lead opinion to the contrary.

### *Relevant Ohio Law*

{¶ 57} It is instructive to review our prenatal tort jurisprudence, as wrongful-birth claims share characteristics of both the wrongful-pregnancy and wrongful-life actions. Specifically, as in a wrongful-pregnancy action, the parents in a wrongful-birth action allege that due to the medical providers' negligence, the mother delivered a child with a birth defect. And, similar to the claims made in a wrongful-life case, the parents in a wrongful-birth case seek damages for a disabled child.

### Wrongful Pregnancy

{¶ 58} In *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 2 O.O.3d 133, 356 N.E.2d 496, we held that public policy did not preclude parents from bringing a wrongful-pregnancy action when medical negligence results in an unsuccessful sterilization procedure. In *Johnson v. Univ. Hosps. of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370, we addressed the measure of damages available in a wrongful-pregnancy action. After reviewing the four theories of recovery employed by different states, we held that "Ohio recognizes the 'limited damages' rule which limits the damages to the pregnancy itself and does not include child-rearing expenses. The extent of recoverable damages is limited by Ohio's public policy that the birth of a normal, healthy child cannot be an injury to her parents." Id. at paragraph two of the syllabus. And most recently, in *Simmerer v. Dabbas* (2000), 89 Ohio St.3d 586, 733 N.E.2d 1169, we considered whether a parent could recover damages for parenting a child born with a birth defect in a wrongful-pregnancy action. We held that "[m]edical expenses and emotional distress damages associated with a child's birth defect are not recoverable in a wrongful-pregnancy action, when the child's birth defect was not reasonably foreseeable by the defendant who negligently performed the sterilization procedure." Id. at syllabus. The court noted that a physician's understanding that a negligently performed sterilization procedure *may* result in the birth of an unhealthy child

does not establish proximate causation. Through our discussion of *Williams v. Univ. of Chicago Hosps.* (1997), 179 Ill.2d 80, 227 Ill.Dec. 793, 688 N.E.2d 130, we have distinguished the situation in which the medical provider knew that the parent sought sterilization to avoid the conception of a child with a particular congenital defect. *Simmerer*, 89 Ohio St.3d at 589–590, 733 N.E.2d 1169. However, we have not addressed the issue of whether, in a wrongful-pregnancy action, parents may recover damages for raising a disabled child where the physician knew that the parents had sought sterilization to prevent having a child with a particular genetic defect.

## Wrongful Life

{¶ 59} In *Hester v. Dwivedi* (2000), 89 Ohio St.3d 575, 733 N.E.2d 1161, a wrongful-life case, this court held that "[a] child born with physical or other handicaps does not state a cause of action in medical negligence based upon the failure of a doctor to inform the child's mother during her pregnancy of test results indicating a possibility that the child would be born with defects, thereby depriving the mother of the opportunity to make a fully informed decision as to whether to obtain a legal abortion." Id. at syllabus. In reaching our holding, we noted that the basis of the argument in a wrongful-life action is that the child would have been better off had she not been born. Id. at 581–582, 733 N.E.2d 1161. Thus, in accordance with *Anderson v. St. Francis–St. George Hosp., Inc.* (1996), 77 Ohio St.3d 82, 671 N.E.2d 225 (discussing the tort of "wrongful living"), this court declined to compare "the value of being, *albeit with handicaps*, versus nonbeing" (emphasis added) and thus rejected the child's claim that she had suffered a compensable injury by being born. *Hester*, 89 Ohio St.3d at 582, 733 N.E.2d 1161. We emphasized that a child does not have control over her existence or nonexistence and that the medical provider's breach did not cause the defect but, rather, caused her birth. Id. at 582–583, 733 N.E.2d 1161.

## Case Facts

{¶ 60} Helen and Richard Schirmer appeal, and Dr. Kevin Fitzgerald, Mt. Auburn Obstetrics & Gynecologic Associates, Inc., Children's Hospital Medical Center, Martha Walker, and Dr. Howard M. Saal (collectively referred to as the "medical providers") cross-appeal from a judgment of the First District, which reversed the trial court's decision to dismiss the Schirmers' complaint for failure to state a claim upon which relief may be granted, but limited the measure of their damages for their wrongful-birth claim to those consequential, economic damages of raising their disabled child over and above ordinary child-rearing expenses and further excluded recovery for noneconomic damages.

510

{¶ 61} On appeal and cross-appeal before our court, the parties do not dispute that there is a duty on the part of the medical providers to perform genetic testing in a nonnegligent manner, nor do they disagree that a breach, at least in theory, could be established. Rather, they contest causation and damages.

{¶ 62} Regarding causation, the Schirmers allege that the prenatal negligent testing prevented them from being able to abort the fetus and thereby avoid the costs, emotional and financial, of caring for a severely disabled child.

{¶ 63} The legal questions then become, what damages, if any, did the negligent prenatal testing proximately cause and are they recoverable as a matter of law? We allowed pregnancy-related expenses in a wrongful-pregnancy action when a mother had sought to avoid becoming pregnant, but conceived a child after a negligently performed sterilization procedure. *Johnson,* 44 Ohio St.3d 49, 540 N.E.2d 1370. Similarly, in this case, the Schirmers claim they would have aborted the fetus had they been informed about its genetic condition. Nonetheless, unlike the circumstances of a wrongful-pregnancy claim, parents in a wrongful-birth case agreed to conceive a child, and only after birth and learning about the alleged negligence of the medical providers do they claim that they would have aborted the fetus during the pregnancy had they earlier been informed of a genetic deficiency.

*Nontraditional Analysis*

{¶ 64} In *Azzolino v. Dingfelder* (1985), 315 N.C. 103, 337 S.E.2d 528, the court highlighted the problems created by trying to fit a wrongful-birth action into traditional tort analysis: while the elements of duty and breach may be established, the issue of proximate cause is "more problematic": no evidence exists to establish that any medical defendant caused any genetic defect in the fetus because the defect preexisted the creation of the physician-patient relationship.

{¶ 65} Moreover, the allowance of damages requires a legal determination that life—albeit "unhealthy," as the lead opinion characterizes it, or genetically defective—can constitute an injury cognizable at law. To my mind, life, in any form, cannot constitute an injury at law.

{¶ 66} As observed in *Azzolino,* " 'Although courts and commentators have attempted to make it such, wrongful birth is not an ordinary tort. It is one thing to compensate destruction; it is quite another to compensate creation. This so-called "wrong" is unique: It is a new and on-going condition. As life, it necessarily interacts with other lives. Indeed, it draws its "injurious" nature from the predilections of the other lives it touches. It is naive to suggest that such a situation falls neatly into conventional tort principles, producing neatly

calculable damages.' " Id. at 112–113, 337 S.E.2d 528, quoting Burgman, Wrongful Birth Damages: Mandate and Mishandling by Judicial Fiat (1978), 13 Val.U.L.Rev. 127, 170.

{¶ 67} In *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 417–418, 413 N.Y.S.2d 895, 386 N.E.2d 807, Judge Wachtler stated in his dissent:

{¶ 68} "A doctor who provides prenatal care to an expectant mother should not be held liable if the child is born with a genetic defect. Any attempt to find the physician responsible, even to a limited extent, for an injury which the child unquestionably inherited from his parents, requires a distortion or abandonment of fundamental legal principles and recognition, by the courts, of controversial rights and duties more appropriate for consideration and debate by a legislative body."

{¶ 69} In my view, today's creation of this new medical-malpractice cause of action further confuses the traditional lines of tort analysis followed in all cases but this.

{¶ 70} During oral argument before our court, the Schirmers urged recovery of damages for denial of their right to obtain an abortion; a thorough examination of the record reveals, however, that no such denial occurred. Rather, at best, the evidence demonstrates only two of the four elements of a medical-negligence claim, i.e., an existing duty of a medical professional and a breach thereof. No evidence exists to support a legal conclusion that the breach of duty by the medical professional either proximately caused the loss of an opportunity for an abortion or proximately caused the genetic defect.

{¶ 71} I cannot comprehend the new standard of proximate cause utilized by the lead opinion in this case, finding that pregnancy- and birth-related costs are "sufficiently linked" to allow recovery. This new standard, I would assert, further blurs the clear lines of analysis of proximate cause delineated by this court for decades because it does not require that the alleged breach of the medical duty proximately caused the damages it awards.

{¶ 72} In addition, this matter is at best unclear with respect to damages, since the Schirmers have withdrawn their request for pregnancy-related damages, which the majority awards. And allowing these pregnancy and birth-related damages is at odds with the thinking of two other justices of our court who assert in a concurring opinion that damages should include "economic and noneconomic costs associated with raising a child with a medical condition that the defendants represented to the parents was not present"—which the majority does not award! Here then, two justices comprised within the majority express differences with respect to the nature and extent of recoverable damages.

{¶ 73} In *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 637 N.E.2d 870, the court announced a rule of law allowing claimants to bring a cause of action for alleged sexual abuse at any time between the date of the alleged abuse and the revived memory of it. In his dissenting opinion, Chief Justice Moyer stated, "If that is to be the law of Ohio, it is the General Assembly that should declare it as such rather than this court." Id. at 120, 637 N.E.2d 870. Today, however, it is this court that has created an entirely new cause of action in medical malpractice with its attendant problems of proximate cause and the scope of damages.

{¶ 74} The foregoing confirms my view that such a cause of action should not become a cognizable claim at law under traditional tort analysis absent legislative authorization, because it involves important matters of public policy better left to the General Assembly.

LUNDBERG STRATTON and LANZINGER, JJ., concur in the foregoing opinion.

---

LANZINGER, J., dissenting.

{¶ 75} Regardless of the label used in this case, I respectfully dissent, believing that traditional negligence concepts fit poorly and that the legislature should decide these controversial and major public-policy issues.

{¶ 76} I do not believe that the elements of causation and damages are adequately discussed or that the boundaries of the new tort are well defined. In the typical medical-malpractice case, a doctor who fails to meet the appropriate medical standard of care and directly causes injury to a patient will be liable for a full range of damages. As recognized by the lead opinion, liability, albeit limited, may arise for medical providers when a breach does not directly lead to an "injury," as that term is generally understood. In the matter before us, the harm claimed by appellants includes the financial cost of caring for their disabled child. The lead opinion nonetheless limits damages that may be recovered in holding that parents of an unhealthy child may claim that their right to reproductive choice is affected when they were not informed or appropriately counseled about the fetus's defect.

{¶ 77} In its discussion on damages, which appears before the discussion on proximate cause, the lead opinion relies on dicta in *Hester v. Dwivedi* (2000), 89 Ohio St.3d 575, 733 N.E.2d 1161, a case rejecting wrongful life as a cause of action. Although the parents did not present a claim themselves, *Hester* noted certain "financial obligations associated with parenthood." Id. at 582, 733 N.E.2d 1161. It further characterized the parents' potential injury as the deprivation of "the choice to avoid *those* expenses by terminating the pregnancy." (Emphasis added.) Id. However, rather than allow for potential compensation for the financial obligations of parenthood, the lead opinion uses the "limited damages"

rule established in *Johnson v. Univ. Hosps. of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370. Potential damages for the new tort are cut off because there is no proximate cause between the appellees' alleged breach of duty and the child's preexisting and untreatable condition.

{¶ 78} The lead opinion frankly acknowledges that appellees "did nothing to cause [Matthew's] condition and could not have prevented it by treating either Matthew or his mother." Because the malpractice is appellees' failure to present information that could have led to the pregnancy's termination, the lead opinion concludes that appellees proximately caused a continued pregnancy and birth and, as a consequence, may be liable for "pregnancy- and birth-related costs."

{¶ 79} Yet even if we assume that a breach of duty legally affected the exercise of a protected reproductive right, the birth that ensues is not the only consequence of the breach. The harm that appellants allege in this case includes the financial costs in caring for their disabled child. As did the appellate court in this case, most states that recognize actions of this type allow recovery of at least economic damages. *Arche v. United States Dept. of the Army* (1990), 247 Kan. 276, 282, 798 P.2d 477. These usually include the extraordinary medical, educational, and other expenses that are associated with and are consequences of the disorder. See, e.g., id. at 292, 798 P.2d 477 (extraordinary medical expenses and other pecuniary losses until age of majority); *Haymon v. Wilkerson* (D.C.App.1987), 535 A.2d 880, 885–886 (extraordinary medical costs); *Smith v. Cote* (1986), 128 N.H. 231, 242–246, 513 A.2d 341 (medical and educational costs and extra burden of care attributable to child's impairment); *Jacobs v. Theimer* (Tex.1975), 519 S.W.2d 846, 849 (expenses reasonably necessary for treating and caring for child's physical impairment); *Dumer v. St. Michael's Hosp.* (1975), 69 Wis.2d 766, 776, 233 N.W.2d 372 (additional medical and supportive expense occasioned by the child's deformities).

{¶ 80} The lead opinion's artificial limitation on damages illustrates that this is not a typical "claim sounding in medical malpractice rather than wrongful life or wrongful birth," as asserted in the lead opinion. I believe that the action for lost opportunity to terminate a pregnancy is an unwarranted judicial creation.

{¶ 81} The lead opinion says that the court is not deciding whether abortion should be considered a proper course of treatment during prenatal care. Broadly read, however, the action now legally cognizable means that a health-care provider who does not fully inform a pregnant woman of her fetus's defective condition (diagnosis) in time for an abortion (treatment) may be held liable for obstetrical costs. Specifically, a woman who seeks prenatal care and intends to continue her pregnancy only with a healthy fetus has a cause of action for an impeded abortion if she is told incorrectly that the fetus is healthy. Assuming that the mother can prove she would have aborted rather than deliver an

unhealthy child, those who misdiagnose or fail to inform her of a fetal defect or disease are now liable on a malpractice theory. Among the unintended consequences of such a theory is that doctors in this field may respond by overstating negative findings in situations with ambiguous genetic or other data to avoid defending a suit for a lost chance of abortion.

{¶ 82} It seems incongruous that while *Hester* holds that a child may not be compensated for its physical birth defects through a wrongful-life action, parents may be compensated for the expenses of pregnancy and birth if they do not receive accurate prenatal information about a preexisting and untreatable defect. Even if the cause of action is not called wrongful birth, the reason supporting the action still is the fetus's continued existence and the birth of an unhealthy child. Unless the child born is unhealthy, there is no cause of action for a woman who asserts that she would have terminated her pregnancy upon receipt of additional medical information. And unless a woman asserts that she would have terminated her pregnancy had she known of the fetus's condition, there is no claim for a woman surprised by the birth of an unhealthy child.

{¶ 83} The syllabus does limit this newly cognizable action. Nevertheless, since a woman has the right to terminate a pregnancy for any reason within the time legally permitted, *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, why should the cause of action for a lost opportunity be confined to situations in which an unhealthy child is delivered? Any inaccurate medical information can be said to affect "the opportunity for an informed decision-making process" if a woman contends after giving birth that she would otherwise have chosen this option. Might parents eventually claim that if they had accurately known the sex of the fetus in time, there would have been no birth? Might they then recover obstetrical costs?

{¶ 84} Public policy may demand that the Ohio legislature enact a statute defining the scope of liability for those physicians and health-care providers who negligently fail to provide adequate guidance to parents about potential genetic or other defects either through prepregnancy counseling or prenatal care. On the other hand, Ohio's public policy may also favor barring recovery of even obstetrical costs when the claim is based merely on the mother's statement, after a birth, that she would have terminated the pregnancy had she known of undisclosed information. I disagree with the view that these choices are for judges to make. A full discussion of the competing principles and controversial issues should be left to the General Assembly, the body best equipped to allocate foreseeable risks and potential liability.

{¶ 85} Because I believe that adopting this new cause of action is unwise and cannot be justified by traditional tort concepts of causation and damage, I would leave the matter for the legislature to determine.

LUNDBERG STRATTON and O'DONNELL, JJ., J., concur in the foregoing opinion.

Mark B. Smith Co., L.P.A., and Mark B. Smith; and Sandra L. Steele, for appellants and cross-appellees.

Adkinson & Assoc., L.L.C., and Patrick K. Adkinson; Arnold, Todaro & Welch and Karen L. Clouse, for appellees and cross-appellants Kevin Fitzgerald, M.D. and Mt. Auburn Obstetrics & Gynecologic Associates, Inc.

Dinsmore & Shohl, L.L.P., Frank C. Woodside III, Jeffrey R. Schaefer, and Robert A. Carpenter, for appellees and cross-appellants Children's Hospital Medical Center and Martha Walker, M.S.

Rendigs, Fry, Keily & Dennis, Paul W. McCartney, and Megan K. Roach, for appellee and cross-appellant Howard Saal, M.D.

Davis & Young, Jan L. Roller, and Richard M. Garner, urging reversal for amicus curiae, University Hospitals of Cleveland.